**John R. TAMBONE, M.D.,**
**Plaintiff-Appellee,**

v.

**MEMORIAL HOSPITAL FOR McHENRY COUNTY, INC., an Illinois Corporation, et al., Defendants-Appellants.**

**No. 86–1845.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1986.

Decided July 14, 1987.

Alfred C. Tisdahl, Jr., French, Rogers, Kezelis & Kominiarek, P.C., Chicago, Ill., for defendants-appellants.

David L. Clark, Brozosky & Brosk, P.C., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

In May 1979 plaintiff, a physician and surgeon licensed to practice medicine in Illinois, filed a three-count complaint against the Memorial Hospital for McHenry County, Illinois, the Kishwaukee Valley Medical Group and numerous individuals. The complaint assailed the 1974 revocation of plaintiff's staff privileges at Memorial Hospital. In September 1977 plaintiff applied to the hospital for a resumption of staff privileges but his application was denied in March 1978. The following month he applied to the hospital for "limited medical and staff privileges" but that application was denied in June of the same year. The first count of the complaint alleged a conspiracy among the defendants to make it impossible for the plaintiff to practice medicine in Woodstock, Illinois, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). Count 2 was based on the Illinois Antitrust Act (Ill.Rev.Stat. ch. 38, ¶ 60–1 *et seq.*) under the doctrine of pendent jurisdiction. The final count was based on the Civil Rights Act (42 U.S.C. § 1983) and challenged the 1974 proceedings of the hospital's credentials and nominating committee dealing with plaintiff. These proceedings were said to have violated procedural due process guarantees and to have resulted from a conspiracy among defendants to deprive plaintiff of the right to practice medicine in Woodstock. The complaint requested $1,000,000 in damages.

The Section 1983 claim was dismissed in 1979 and is not involved in this appeal. However, in March 1986 the district court refused to dismiss the Sherman Act and pendent state antitrust claims. The district court's opinion is reported at 635 F.Supp. 508. The court held that under the applicable Illinois statutes and regulations, defendants were not immune from federal antitrust liability under the state action doctrine first promulgated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315. For antitrust immunity to apply to a private actor under *Parker v. Brown*, two standards must be met:

> First, the challenged restraint must be "one clearly articulated and affirmatively expressed as state policy"; second, the policy must be "actively supervised" by the State itself.

*California Liquor Dealers v. Midcal Aluminum*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233; *324 Liquor Corp. v. Duffy*, —— U.S. ——, 107 S.Ct. 720, 725, 93 L.Ed.2d 667. In this Circuit, the governing authority on the state action exemption for hospital peer review is *Marrese v. Interqual, Inc.*, 748 F.2d 373 (7th Cir.1984), certiorari denied, 472 U.S. 1027, 105 S.Ct. 3501, 87 L.Ed.2d 632.[1]

In a careful opinion, District Judge Rovner analyzed the Illinois statutory and regulatory system applicable to hospital peer

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. *Marrese* was reaffirmed by this Court in *Doe on behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411 (7th Cir.1986), and *Ezpeleta v. Sisters of Mercy Health Corp.*, 800 F.2d 119 (7th Cir. 1986) (*per curiam*), both of which dealt with hospital peer review in Indiana, and was recently followed by the Ninth Circuit in *Patrick v. Burget*, 800 F.2d 1498 (1986).

review in Illinois. As to the "clear articulation of state policy" prong, she concluded that it was satisfied because Ill.Rev.Stat. ch. 111, ¶ 4406, demonstrates a state policy in favor of peer review committees by providing good faith immunity from civil damages to members of such committees. Cf. also Ill.Rev.Stat. ch. 111½, ¶ 151.2 (effective Aug. 16, 1985) (providing absolute immunity from civil damages for members of peer review committees). However, the "active state supervision" prong was not met, according to the district court, because during the years in issue Illinois did not supervise the peer review process. This holding that defendants failed to show active Illinois supervision of these activities was certified to us for decision under 28 U.S.C. § 1292(b), and is the only matter before us. We affirm.

As previously noted, the principles established in *Marrese* control this case. There the Indiana system applicable to the peer review process was carefully analyzed and it was concluded that, as here, the peer review procedures with respect to Dr. Marrese's clinical privileges satisfied the "clearly articulated" prong of the state action exemption from the Sherman Act. *Marrese* also held that the state "active supervision" element was satisfied. Under the Indiana statutory scheme, the Medical Licensing Board created by the Indiana legislature reviews the confidential communications, records, and determinations of hospital peer review committees. 748 F.2d at 389. In addition, under the Indiana Administrative Code, field inspectors of the Indiana Hospital Licensing Council review the records of hospital peer review committees, *id.* at 390, and members of hospital peer review committees are accorded immunity from civil liability by Indiana statute, *id.* at 391–392. Still another Indiana statute provides doctors evidentiary hearings with procedural safeguards before hospital peer review committees, with the right of appeal to Indiana state courts from adverse decisions of a hospital board. *Id.* at 392–393. Consequently, the *Marrese* court held that the state of Indiana did actively supervise the medical peer review process and that the defendants' actions

were exempt from the federal antitrust laws under the state action doctrine. *Id.* at 395.

In contrast to the Indiana system, during the periods in question in this case, the only Illinois statutory reference to hospital peer review committees was the following one:

> While serving upon any Medical Utilization Committee, Medical Review Committee, Patient Care Audit Committee, Medical Care Evaluation Committee, Quality Review Committee, Credential Committee, *Peer Review Committee*, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital duly licensed under the Hospital Licensing Act, or the improving or benefiting of patient care and treatment whether within a hospital or not, or for the purpose of professional discipline, any person serving on such committee, and any person providing service to such committees shall not be liable for civil damages as a result of his acts, omissions, decisions, or any other conduct in connection with his duties on such committees, except those involving willful or wanton misconduct.

Ill.Rev.Stat. ch. 111, ¶ 4406 (emphasis supplied) (footnote omitted). Such a reference is of course insufficient to show that Illinois was actively supervising the peer review process. In addition, none of the regulations quoted by defendants (Joint App. 57a–132a) evidences active state supervision or involvement with peer review committees; rather, they concern only the licensing of hospitals, accreditation of medical schools, and admission to practice medicine. Defendants argue that Illinois is actively involved in regulating hospitals and licensing physicians, but unlike the defendants in *Marrese*, they have failed to demonstrate state supervision of the peer review process. Illinois has state administrative procedures for disciplining doctors, but this does not mean (and defendants failed to show) that during the period in question it supervised private disciplinary proceedings.

After 1983, reports to the Illinois State Medical Disciplinary Board of hospital peer

review determinations were made mandatory. Ill.Rev.Stat. ch. 111, ¶ 4437(a)(1). This was the first time that there was any supervision of the peer review process by an Illinois agency. Since this amendatory legislation did not become effective until 1983, it is of no avail to defendants here where the challenged conduct occurred from 1974 to 1978. The district court found that prior to the enactment of that statute, inspectors of the Illinois Department of Public Health merely had access to peer review materials but were not obligated to review them. 635 F.Supp. at 514–515. Defendants have not shown that the state inspectors reviewed these materials often (or at all) nor that any other systematic state supervision in fact took place prior to 1983.

The fact that prior to 1983 Illinois regulations may have tolerated the existence of hospital peer review committees does not prove active state supervision. The cited regulations did not require such committees nor establish a state policy or apparatus for supervising their activities. The Supreme Court has recently stressed that it is not sufficient that the state merely " 'give[s] immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful.' " *324 Liquor Corp.*, 107 S.Ct. at 725 (quoting *Parker v. Brown*, 317 U.S. at 351, 63 S.Ct. at 313). It is axiomatic that "the federal antitrust laws preempt state laws authorizing or compelling private parties to engage in anticompetitive behavior," and for the state action doctrine to apply, the state cannot merely "displace[ ] competition ... without substituting an adequate system of regulation." 107 S.Ct. at 726 and n. 8. In *324 Liquor Corp.*, the chal-

lenged statutes allowed the possibility of state intervention in the mandatory liquor-pricing scheme—the New York State Liquor Authority was empowered to permit individual sellers to depart from the pricing scheme for good cause and the legislature "frequently" considered proposals to alter the system—but the Court held that the state involvement was insufficient to satisfy the second prong of the state action doctrine. *Id.* 107 S.Ct. at 726 and n. 7. Similarly, Illinois' pre–1983 "regulatory program," which at most contemplated hospital peer review committees, provided immunity from civil damages, and allowed the possibility that inspectors might ask to see peer review materials, is insufficient to establish active state supervision.[2]

Consequently, it is clear that the district court correctly held that the state action exemption from the federal antitrust laws is not applicable to this case. However, as plaintiff has admitted, defendants can still file a motion for summary judgment if they can now muster support to demonstrate that "active [Illinois] supervision of the instant peer review process actually did take place during or following the 1974, 1977 and 1978 incidents of which Plaintiff complained." Reply Brief to Amicus Brief at page 3.[3] We only hold that during the 1974–1978 period Illinois did not adequately supervise peer review committees so as to exempt their activities in all cases from the restrictions of federal antitrust laws.

The March 28, 1986, order of the district court denying defendants' motion to dismiss is affirmed.

---

**2.** The recently enacted Health Care Quality Improvement Act of 1986, Pub.L. 99–660, 100 Stat. 3743, 3784 (to be codified at 42 U.S.C. § 11101 *et seq.*), exempts professional review actions commenced on or after November 14, 1986, from civil damages for *inter alia* federal antitrust law violations when those proceedings employ certain minimum procedural safeguards and report a summary of their actions to the state Board of Medical Examiners, which in turn must report this information to the Secretary of Health and Human Services. *Id.* at §§ 412, 423, 424, 100 Stat. at 3785–3787, 3789–3791. By its terms, this statute does not apply to the present action. Significantly, the manda-

tory reporting requirements needed to qualify for the exemption from civil damages far exceed any alleged reporting under the Illinois laws and regulations during the period in question in this lawsuit.

**3.** The Illinois Hospital Association and the Metropolitan Chicago Healthcare Council filed an amicus brief urging that peer review in Illinois falls within the state action exemption to the antitrust laws. Their brief fails to show that from 1974 to 1978 Illinois actively supervised hospital peer review committees, an essential showing for that exemption to apply.