980 F.2d 1381
 61 USLW 2449, 1993-1 Trade Cases P 70,092
 Richard A. BOLT; Richard A. Bolt, M.D., P.A., Plaintiffs-Appellees,
v.
HALIFAX HOSPITAL MEDICAL CENTER, Defendant-Appellant,
Daytona Community Hospital; Ormond Beach Memorial Hospital;
Humana, Inc.; Volusia County Medical Society, Inc.; Shed
Roberson, M.D.; Alvin Smith, M.D.; Richard Boye, M.D.;
Willis Stose, M.D.; Ralph Marino, M.D.; C.R. DeArmas, Jr.,
M.D.; Thurman Gillespy, Jr., M.D., Defendants.
 No. 91-3562.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 7, 1993.
 
 Jay D. Zeiler, Clinton R. Batterton, David A. Donohoe, Akin, Gump, Hauer & Feld, Washington, D.C., Janet W. Adams, Adams, Hill, Reis, Adams & Hall, W. Stose, M.D., Kimberly A. Ashby, Maguire, Voorhis & Wells, P.A., Orlando, Fla., Harold Hubka, Black, Crotty, Sims, Hubka, Burnett, Bartlett & Samuels, Daytona Beach, Fla., for defendant-appellant.
 Donald E. Christopher, Litchford, Christopher & Milprath, Orlando, Fla., for plaintiffs-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before COX, Circuit Judge, CLARK and WELLFORD*, Senior Circuit Judges.
 COX, Circuit Judge:
 
 
 1
 Halifax Hospital Medical Center (HHMC) appeals the district court's denial of its motion for summary judgment, arguing that it is immune to antitrust liability under the state-action immunity doctrine. For the reasons stated below, we vacate and remand.FACTS AND PROCEDURAL HISTORY[1]
 
 
 2
 In 1979, Dr. Richard A. Bolt applied for, and was granted, staff privileges at three Daytona Beach, Florida area hospitals. Two of the hospitals, Daytona Community Hospital and Ormond Beach Memorial Hospital, are private. The third, HHMC, is a hospital created and funded by a special taxing district of the State of Florida. See 1979 Fla.Laws 577. Bolt was granted temporary or probationary staff privileges for two years at each hospital. In 1981, he applied for reappointment at all three hospitals. The peer review committee at each hospital considered Bolt's application, and each committee recommended that his application be denied based upon his unprofessional conduct during the previous two-year appointment. Bolt was denied reappointment by each hospital.
 
 
 3
 Following the hospitals' decisions, Bolt filed a complaint in federal court asserting federal antitrust claims, federal constitutional claims, federal contract claims, and several pendent state law claims. With respect to his antitrust claims, Bolt alleged that the defendants had conspired to deny his reappointment in restraint of trade and to monopolize the practice of medicine and surgery, in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Specifically, Bolt alleged the existence of three different conspiracies: (1) between the Daytona Community Hospital and the members of its medical staff serving on the hospital's peer review committee; (2) between HHMC and the members of its medical staff taking part in the peer review decision there; and (3) among HHMC, Daytona Community Hospital, Ormond Beach Memorial Hospital, the members of their medical staffs, and the Volusia County Medical Society.[2]
 
 
 4
 At trial, following the presentation of the Plaintiff's case, the district court granted the Defendants' motions for directed verdict on the Sherman Act claims and dismissed without prejudice the pendent state law claims. Bolt v. Halifax Hosp. Medical Center, No. 82-122-ORL-CIV-18 (M.D.Fla. Mar. 21, 1984). The district court held that Bolt failed to introduce evidence of an unlawful contract, combination, or conspiracy under the Sherman Act. Bolt appealed, contending that the district court had erred in excluding certain expert witness testimony. In our first panel opinion in this case, we held that the hospitals and their medical staffs were private parties acting pursuant to a clearly articulated state policy and were being actively supervised by the State. Thus, we held, they were exempt from federal antitrust liability under the state-action immunity doctrine first articulated in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), as interpreted in Patrick v. Burget, 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988). See Bolt v. Halifax Hosp. Medical Center, 851 F.2d 1273, 1284 (11th Cir.1988) (Bolt I ). Specifically, we found that Florida's regulatory scheme provides for judicial review of hospital peer review board decisions if those decisions are sufficiently probing to constitute "active state supervision" under Parker and Patrick. See Bolt I, 851 F.2d at 1281-84. This earlier decision, however, was vacated and the case was heard en banc. Bolt v. Halifax Hosp. Medical Center, 861 F.2d 1233 (11th Cir.1988). During en banc oral argument, the hospitals and their medical staffs formally withdrew their claim of immunity under the Parker state-action doctrine. Accordingly, the en banc court did not decide the immunity question and remanded to the panel with an instruction to reconsider the case in light of the hospital's and medical staff's waiver of state-action immunity. Bolt v. Halifax Hosp. Medical Center, 874 F.2d 755 (11th Cir.1989) (en banc) (Bolt II ).
 
 
 5
 Upon remand to the panel, HHMC argued that it was a state agency under Parker and thus immune from antitrust liability, or alternatively, that it was a municipality immune from antitrust liability under the Supreme Court's opinion in Town of Hallie v. City of Eau Claire, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). See Bolt v. Halifax Hosp. Medical Center, 891 F.2d 810 (11th Cir.), cert. denied, 495 U.S. 924, 110 S.Ct. 1960, 109 L.Ed.2d 322 (1990). (Bolt III ).[3] In Bolt III, this court rejected HHMC's "state agency" argument holding that HHMC was not a state agency acting as a sovereign. Bolt III, 891 F.2d at 823-24. We did find, however, that the powers granted by the Florida legislature to HHMC in its enabling legislation were virtually identical to those of a municipality in many important respects. Thus, we held that HHMC should be treated as a municipality and its actions tested under Town of Hallie. Id. at 824-25. Nevertheless, we concluded that HHMC was not immune to antitrust liability because Bolt had alleged that HHMC conspired with the members of its peer review board to deny him staff privileges. Id.
 
 
 6
 In April 1991, the Supreme Court issued its opinion in City of Columbia v. Omni Outdoor Advertising, Inc., --- U.S. ----, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). In that case, the Court held that there was no conspiracy exception to the state-action immunity doctrine. In light of City of Columbia, HHMC filed a motion for summary judgment. The district court denied HHMC's motion, finding that Bolt III did not rely on a conspiracy exception to deny HHMC state-action immunity, but instead relied on a straightforward application of Town of Hallie for its decision. HHMC appeals the district court's order. For the following reasons we vacate and remand.
 
 ISSUE ON APPEAL
 
 7
 Whether the district court erred in denying HHMC's motion for summary judgment in light of the Supreme Court's decision in City of Columbia v. Omni Outdoor Advertising, Inc., --- U.S. ----, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991).
 
 CONTENTIONS OF THE PARTIES
 
 8
 Bolt contends that the law-of-the-case doctrine precludes any further review of this issue because a panel of this court in Bolt III has already resolved this issue in his favor. Bolt argues that this court's decision in Bolt III was based not on a conspiracy exception to the state-action doctrine, but on a straightforward application of the Supreme Court's analysis in Town of Hallie. Therefore, the Supreme Court's recent pronouncement in City of Columbia did not overrule Bolt III, and summary judgment in favor of HHMC is not warranted.
 
 
 9
 HHMC argues that the Supreme Court's decision in City of Columbia entitles it to summary judgment in this case. It argues that the decision in Bolt III is grounded on the finding that the hospital and its medical staff conspired to deny Bolt staff privileges upon a bad-faith pretext. Under City of Columbia, HHMC contends, the subjective motives of its board in denying Bolt's application are irrelevant. Thus, City of Columbia implicitly overruled Bolt III and entitles HHMC to summary judgment on the basis of state-action immunity.
 
 STANDARD OF REVIEW
 
 10
 Because the question of immunity is strictly one of law, this court must make a de novo determination of whether the district court erred in denying summary judgment. Griesel v. Hamlin, 963 F.2d 338, 341 (11th Cir.1992); Morrison v. Washington County, Ala., 700 F.2d 678, 682 (11th Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Summary judgment will be granted when the moving party succeeds in showing that there exists no genuine issue of material fact when all the evidence is viewed in the light most favorable to the nonmovant. Sweat v. Miller Brewing Co., 708 F.2d 655, 656 (11th Cir.1983).
 
 DISCUSSION
 A. The State-Action Immunity Doctrine
 
 11
 The state-action immunity doctrine is rooted in the Supreme Court's decision in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In Parker, the Supreme Court considered whether the Sherman Act prohibits anticompetitive conduct by a state. The petitioner sought to enjoin the California Director of Agriculture from enforcing a program adopted pursuant to the California Agricultural Prorate Act, which restricted the marketing of privately produced raisins. The statute was intended to restrict competition among agricultural producers in the state in order to stabilize prices and prevent economic waste. Relying on the principles of federalism and state sovereignty, the Court refused to find that the Sherman Act was "intended to restrain state action or official action directed by a state." 317 U.S. at 351, 63 S.Ct. at 313. Rather, the Court held, "its purpose was to suppress combinations to restrain competition and attempts to monopolize by individuals and corporations...." Id. The Court concluded that the Sherman Act did not prohibit anticompetitive restraints prescribed by the states "as an act of government." Id. at 352, 63 S.Ct. at 314.
 
 
 12
 The Parker doctrine is directly applicable only to the anticompetitive actions of the States. It does not apply directly to municipalities or other political subdivisions, because these subdivisions "are not themselves sovereign; they do not receive all the federal deference of the States that create them." See City of Lafayette, La. v. La. Power & Light Co., 435 U.S. 389, 412, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978). Political subdivisions, including municipalities, however, can obtain protection under the state-action immunity doctrine if they can "demonstrate that their anticompetitive activities were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.' " Town of Hallie v. City of Eau Claire, 471 U.S. 34, 38-39, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985) (quoting Lafayette, 435 U.S. at 413, 98 S.Ct. at 1137).
 
 
 13
 In Town of Hallie, the Petitioners were unincorporated townships adjacent to the City of Eau Claire, Wisconsin. The Townships brought suit against Eau Claire as potential competitors of the City in the collection and transportation of sewage. The Townships claimed that Eau Claire had acquired a monopoly in the provision of sewage treatment services in the area and had used this monopoly to gain unlawful control over the provision of sewage collection and transportation services, in violation of the Sherman Act. The Supreme Court held that the City of Eau Claire was protected from antitrust liability by the state-action immunity doctrine. In so holding, the Court found that the City qualified for the immunity because it was engaged "in the challenged activity pursuant to a clearly expressed state policy." 471 U.S. at 40, 105 S.Ct. at 1717.
 
 
 14
 To show the existence of a state policy displacing competition, the municipality is not required "to point to a specific, detailed legislative authorization." Id. at 39, 105 S.Ct. at 1716 (quoting Lafayette, 435 U.S. at 415, 98 S.Ct. at 1138). "Rather, Lafayette suggested, without deciding the issue, that it would be sufficient to obtain Parker immunity for a municipality to show that it acted pursuant to a 'clearly articulated and affirmatively expressed ... state policy'...." Id. (quoting Lafayette, 435 U.S. at 410, 98 S.Ct. at 1135).[4]
 
 
 15
 In order to determine whether the Wisconsin statutes at issue in Town of Hallie evidenced a "clearly articulated" state policy to displace competition in the provision of sewage services, the Court considered the language of the legislation. The relevant statutes not only authorized cities in Wisconsin to construct, add to, or repair sewage systems, but also empowered them to delineate the areas to be served and authorized them to refuse service beyond the areas so delineated. The Court held that although the legislation did not expressly mention anticompetitive conduct, such conduct was "a foreseeable result of empowering the City to refuse to serve unannexed areas." 471 U.S. at 42, 105 S.Ct. at 1718. The Court further held that the statutory provisions showed that the legislature contemplated the kind of action complained of and that this was enough to satisfy the "clear articulation" requirement of the state-action immunity doctrine. Id. at 44, 105 S.Ct. at 1719.
 
 
 16
 In summary, although municipalities cannot benefit directly from the Parker defense, they may take advantage of the state-action immunity by showing that they are acting pursuant to a clearly articulated state policy to displace competition in favor of regulation. Further, the "clear articulation" test can be satisfied by showing that the legislation, pursuant to which the municipality is acting, contemplates or foresees anticompetitive conduct as a result.
 
 B. Bolt III
 
 17
 In Bolt III, this court found that the similarities between HHMC's enabling legislation and Florida's legislation dealing with general municipality powers were such that HHMC qualified as a municipality for the purpose of testing its actions under Town of Hallie. Bolt III, 891 F.2d at 825. Applying the principles of Town of Hallie, as discussed above, this court stated that:
 
 
 18
 one could correctly say that when Florida's legislature authorized peer review in licensed medical facilities, see Fla.Stat. § 395.011(5), (6) (1987), it could foresee that HHMC would rely on recommendations made by a physician's peers and refuse to deal with (i.e. boycott) that physician. Thus, by granting HHMC the virtually unreviewable power to hire (or not hire) "agents and employees as may be advisable," the Florida legislature clearly articulated a policy to displace competition, at least to the extent that an HHMC decision not to hire a physician can be considered a boycott.
 
 
 19
 Bolt III, 891 F.2d at 825.
 
 
 20
 To this point in Bolt III our court had engaged in a straightforward application of Town of Hallie and concluded that the anticompetitive conduct was a foreseeable result of HHMC's enabling legislation. We went further, however, and held that:
 
 
 21
 [w]hile the Florida legislature must have foreseen that HHMC would engage in anticompetitive conduct based on recommendations of the physician's peers, nothing indicates that the legislature should have foreseen the type of anticompetitive conduct alleged in this case. Dr. Bolt has alleged that HHMC not only relied on the peer review committee's recommendations but also conspired with that committee to deny his privileges on pretextual grounds. If HHMC did conspire, as Dr. Bolt alleges, its conduct constitutes anticompetitive conduct that is not a foreseeable result of HHMC's enabling legislation and that is, in fact, prohibited by the requirement that HHMC act in a manner consistent with "the public good," 1979 Fla. laws ch. 79-577, § 5.
 
 
 22
 Id. We concluded by holding that even when a state policy displaces unrestrained competition, a municipality that "enters into an unauthorized conspiracy to restrain competition may not claim the protection of Town of Hallie." Id. HHMC contends that this court relied on a conspiracy exception to hold that the hospital was not protected by the state-action immunity doctrine of Parker and Town of Hallie. Thus, it argues, Bolt III was effectively overruled by the Supreme Court's opinion in City of Columbia v. Omni Outdoor Advertising, Inc., --- U.S. ----, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). We agree. Whether HHMC had conspired to deny Bolt's privileges upon a pretext or whether the "conspiracy" was unauthorized because it was not done in furtherance of the "public good" are precisely the types of inquiries the Supreme Court rejected in City of Columbia.
 
 C. City of Columbia
 
 23
 In City of Columbia, Omni Outdoor Advertising, Inc. (Omni) brought suit against Columbia Outdoor Advertising, Inc. (COA) and the City of Columbia (City) for alleged violations of the Sherman Act. Omni alleged that it was injured by a city ordinance which restricted the construction and placement of billboards in the City. Omni maintained that the City and COA conspired to bring about the passage of the ordinance in order to restrain and suppress competition in the marketing of outdoor advertising space in interstate commerce and that the City and COA succeeded in monopolizing the relevant market to the detriment of competition, in violation of the Sherman Act. After a jury returned a verdict in favor of Omni, the district court granted the City a judgment notwithstanding the verdict on the ground that it was entitled to immunity from antitrust liability under Parker. Omni appealed.
 
 
 24
 On appeal, the Fourth Circuit, relying on language from Parker, held that the immunity did not apply where the political entity is involved as a conspirator with private parties to restrain trade. Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising, Inc., 891 F.2d 1127, 1134 (4th Cir.1989). The Supreme Court rejected the Fourth Circuit's analysis, as well as arguments similar to those we relied upon in Bolt III. After reiterating that a municipality's restriction of competition may be an authorized implementation of state policy, and thus, accorded Parker immunity, the Court examined the meaning of the word "authority" as used in the Parker analysis. As an example, the Court stated that "it could be contended ... that the city's regulation in the present case was not 'authorized' by S.C.Code § 5-23-10 (1976), ... if it was not, as the statute requires, adopted 'for the purpose of promoting health, safety, morals or the general welfare of the community.' " City of Columbia, --- U.S. at ----, 111 S.Ct. at 1349. Rejecting this mechanical and undiscriminating interpretation of the word "authority," the Court stated that in order to prevent Parker from undermining the concepts of federalism and state sovereignty it was designed to protect, it was necessary to adopt a broader view of authority than is used to determine the legality of a municipality's actions under state law. Id. at ---, 111 S.Ct. at 1350. The Court held that two types of authority were required under Parker: (1) the authority to regulate in the area in question; and (2) the authority to suppress competition. Id. In City of Columbia, the authority to regulate came from the City's zoning power over the size, location, and placement of billboards. Id. The authority to suppress competition requirement was met because the suppression of competition was held to be a foreseeable result of what the state authorized. Id.
 
 
 25
 The Supreme Court identified two sentences from Parker which might be mistakenly relied upon in support of the "conspiracy" exception adopted by the Fourth Circuit: (1) "[W]e have no question of the state or its municipality becoming a participant in a private agreement or combination by others for restraint of trade...." Id. at ----, 111 S.Ct. at 1351 (quoting Parker, 317 U.S. at 351-52, 63 S.Ct. at 314) (emphasis in original). (2) "The state in adopting and enforcing the prorate program made no contract or agreement and entered into no conspiracy in restraint of trade or to establish monopoly but, as sovereign, imposed the restraint as an act of government which the Sherman Act did not undertake to prohibit." Id. at ----, 111 S.Ct. at 1351 (quoting Parker, 317 U.S. at 352, 63 S.Ct. at 314) (emphasis in original). The City of Columbia Court stated that these sentences merely clarify that the Parker immunity does not apply where the State acts not in a regulatory capacity but as a commercial participant in the relevant market. Id. at ----, 111 S.Ct. at 1351. These sentences are not to be read, the Supreme Court held, to imply that governmental regulatory action may be deemed private when taken pursuant to a "conspiracy" with private persons, if "conspiracy" is defined merely as an agreement to undertake the action in question. This argument was rejected as impractical because agreements between public officials and private citizens are inevitable and desirable and "such an exception would virtually swallow up the Parker rule" because all anticompetitive results would be subject to a conspiracy charge. Id. at ----, 111 S.Ct. at 1351.
 
 
 26
 The Court also rejected Omni's argument that the "conspiracy" exception be narrowly applied to situations where "corruption" was involved, with "corruption" defined as the abandonment of public responsibilities to private interests, bad-faith decisions, or selfish or corrupt motives. The Court declined to adopt this argument, holding that it would be impractical to narrow the conspiracy exception along these lines because very few government actions are immune from charges that they are not in the public interest. Id. at ----, 111 S.Ct. at 1352. This type of judicial assessment of the public interest after the fact, the Court held, would compromise the ability of the states to regulate their own commerce. Id. Further, the Court rejected federal judicial inquiry into the state officials' intent in undertaking the challenged action. Such an inquiry, the Court stated, "would require the sort of deconstruction of the governmental process and probing of the official 'intent' that we have consistently sought to avoid." Id. In conclusion the Court held:
 
 
 27
 we reaffirm our rejection of any interpretation of the Sherman Act that would allow plaintiffs to look behind the actions of state sovereigns to base their claims on "perceived conspiracies to restrain trade." We reiterate that, with the possible market participant exception, any action that qualifies as state action is "ipso facto ... exempt from the operation of the antitrust laws."
 
 
 28
 Id. at ----, 111 S.Ct. at 1353 (citations omitted).
 
 
 29
 In Bolt III, after finding that HHMC was a municipality and that anticompetitive conduct was a foreseeable result of its enabling legislation, this court found that the type of anticompetitive conduct alleged by Bolt was not a foreseeable result of HHMC's enabling legislation. Specifically, Bolt alleged that HHMC had conspired with Bolt's peers to deny him staff privileges at the hospital on pretextual grounds. We held that HHMC's participation in this conspiracy, if proved, was prohibited by its enabling legislation which required HHMC to act in a manner consistent with "the public good." The inquiry into whether the reasons for HHMC's denial of staff privileges were pretextual would require probing into the "official intent" of HHMC, an inquiry expressly denounced by the Supreme Court. Id. at ----, 111 S.Ct. at 1352. Also, the determination of whether HHMC's actions were unauthorized because they were inconsistent with "the public good" would require an ex post facto judicial assessment of whether HHMC's actions were, in fact, against the public interest. This type of inquiry has also been rejected by the Supreme Court as inconsistent with the concepts of federalism and state sovereignty that Parker was intended to protect.
 
 
 30
 Although this court did not explicitly adopt a conspiracy exception to state-action immunity in Bolt III, the underlying reasoning for our conclusion was based on the same reasoning rejected by the Supreme Court in City of Columbia. The basic progression of our reasoning in Bolt III was as follows: Although HHMC is authorized to regulate the provision of medical care in its facility and although suppression of competition is a foreseeable result of that regulation, HHMC is not authorized to conspire with its peer review committee to deny privileges upon a pretext or to act in a manner inconsistent with the public good. Consequently, HHMC is not immune to these types of charges.
 
 
 31
 However, anytime that HHMC denies staff privileges, it would be open to such "conspiracy" charges, rendering the state-action immunity meaningless. Further, as stated above, the determination of whether HHMC's reasons for denying staff privileges are a pretext or whether its actions are inconsistent with the public good would require an encroachment into state sovereignty that Parker was intended to prevent. Because City of Columbia rejected the reasoning relied on by this court in Bolt III, we find that HHMC is entitled to summary judgment with respect to Bolt's allegations that it conspired with its peer review committee in violation of the Sherman Act.
 
 CONCLUSION
 
 32
 For the reasons stated, we VACATE the district court's order and REMAND to the district court for further proceedings not inconsistent with this opinion.[5]
 
 
 33
 VACATED and REMANDED.
 
 CLARK, Senior Circuit Judge, dissenting:
 
 34
 In concluding that HHMC is entitled to state action immunity from antitrust liability, the majority commits two independent and distinct errors. First, the majority errs in entertaining the immunity defense. In Bolt II, the en banc court unequivocally held that the appellee hospitals, including HHMC, had waived "any claim that they were immune from antitrust liability under the state action exemption." 874 F.2d at 756. This panel is without authority to disregard the en banc court's mandate by now entertaining this very same immunity defense. Second, assuming the panel is authorized to reach the merits of the immunity defense (which it is not), the majority erroneously concludes that the state action doctrine is applicable here. HHMC is not entitled to state action immunity because it cannot demonstrate that its anticompetitive activities, if they were such, "were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.' " Town of Hallie, 471 U.S. at 39, 105 S.Ct. at 1716 (citation omitted). Accordingly, I dissent.
 
 
 35
 Waiver of the State Action Immunity Defense
 
 
 36
 The en banc court's waiver determination in Bolt II is unequivocal: "Thus, whether or not the defendants are entitled to immunity under Parker's state action exemption, they now have clearly waived that immunity in this case." 874 F.2d at 756. The en banc court could not have more clearly mandated that state action immunity is no longer an issue in this case. Nevertheless, the panel majority attempts to circumvent the en banc court's holding by asserting that HHMC's present position, that it is a municipality entitled to state action immunity under Parker, is distinguishable from the argument waived by the defendants before the en banc court, that they were private parties entitled to such immunity. Even setting aside for a moment the unequivocal language of the en banc court's mandate, the history of this litigation demonstrates that the panel majority's position is illogical and totally devoid of factual support. HHMC has never during the entire course of this lengthy litigation taken the position that it is a private party entitled to state action immunity; rather, HHMC has at all times asserted that it is either a state agency or a municipality entitled to such immunity. As the state agency and municipality arguments are the only state immunity arguments that HHMC has ever made, it is necessarily these arguments that HHMC waived before the en banc court.
 
 
 37
 Back in 1984, the district court granted the defendants' motion for directed verdict on Dr. Bolt's Sherman Act claims. The district court's decision was based not on state action immunity, but on Bolt's failure to introduce evidence of an unlawful contract, combination, or conspiracy. When Dr. Bolt appealed, none of the defendants so much as mentioned state action immunity in their appellate briefs. Rather, the state immunity issue was raised sua sponte by the panel in Bolt I. After all appellate briefs had been filed, the panel sent a letter to all parties requesting that they address the following issue: "Does the state action doctrine exempt the defendants in this case from federal antitrust liability?" In response to the panel's sua sponte inquiry, HHMC responded:
 
 
 38
 Thus, the first test under the state action doctrine is whether it is the state itself which is acting. If so, under Parker, that is the end of the inquiry because the state and its agencies can never be subject to the antitrust laws. There does exist another possibility--that the entity accused of violating the antitrust laws is a county or municipality, in which case it is still outside the scope of the antitrust laws so long as its allegedly anti-competitive action is authorized by the state. Town of Hallie v. City of Eau Claire, 471 U.S. 34 [105 S.Ct. 1713, 85 L.Ed.2d 24] (1985)....
 
 
 39
 The state action doctrine would protect [HHMC] under either analysis. If [HHMC] is considered to be an arm of the State of Florida, as was the raisin district in Parker v. Brown [footnote omitted], then, without further analysis, the antitrust laws do not apply to [HHMC]. If, on the other hand, [HHMC] is considered to be equivalent to a municipality, rather than a state agency, the result would not change. Under Town of Hallie, [HHMC] was clearly authorized to engage in the activity Dr. Bolt has challenged here.
 
 
 40
 HHMC's letter to the court of April 7, 1988, at 3. Thus, HHMC argued that it was entitled to state action immunity either as a state agency or as a municipality; HHMC made no mention of the private party argument. In its opinion, the panel in Bolt I specifically noted HHMC's position:
 
 
 41
 HHMC is not a private hospital like DCH; rather, it is a "special district" created by the Florida legislature. See 1979 Fla.Laws 577. As such, HHMC may be more akin to a municipality than a private person for purposes of state action exemption analysis. In Town of Hallie v. City of Eau Claire, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Supreme Court held that it is sufficient for a municipality to establish that it acted pursuant to a clearly articulated state policy; unlike a private person, a municipality need not also establish active state supervision. Id. at 46-47, 105 S.Ct. at 1720. Because we conclude that both clear articulation and active state supervision are present in this case, we do not decide whether HHMC should be treated as a municipality rather than a private person. [Citation omitted.]
 
 
 42
 The en banc court vacated Bolt I and ordered that the case be reheard en banc. 861 F.2d 1233. In its en banc brief, HHMC again took the position that it was entitled to state action immunity either as a state agency or as a municipality. In fact, HHMC specifically disclaimed the argument that it was entitled to state action immunity as a private party: "Thus, the issues of clear articulation and state supervision which arise in the context of claims against private parties and upon which Dr. Bolt focuses his argument do not apply at all to [HHMC]." Appellee HHMC's en banc brief at 25. Then, at oral argument before the en banc court, all of the hospitals, including HHMC, waived the state immunity defense. The en banc opinion states:
 
 
 43
 In oral argument before the en banc court, the appellee hospitals and their medical staffs formally withdrew any claim that they were immune from antitrust liability under the state action exemption. Thus, whether or not the defendants are entitled to immunity under Parker's state action exemption, they now have clearly waived that immunity in this case. Since we granted rehearing solely to consider this issue, further consideration of the case by the en banc court is unnecessary.
 
 
 44
 The court therefore reinstates the panel opinion, see Bolt v. Halifax Hospital Medical Center, 851 F.2d 1273 (11th Cir.1988), with the exception of the opinion's discussion of the state action exemption, see id. at 1279-84, which remains vacated and without precedential value. The case is thus remanded to the panel, which shall reconsider its decision in light of the hospitals' and medical staffs' waiver of immunity and the parties' outstanding petition for rehearing.
 
 
 45
 874 F.2d at 756. The en banc court unequivocally held that HHMC clearly waived its state action immunity defense.
 
 
 46
 HHMC apparently regretted its decision to waive state action immunity. Approximately two weeks after the en banc court issued its opinion, HHMC filed a motion for clarification of this opinion. The motion states:
 
 
 47
 [HHMC] did not abandon its claim that it is entitled to immunity from antitrust liability, under the state action doctrine, as the only defendant which is a public hospital.... Accordingly, [HHMC] respectfully submits that this Court should clarify its Order to recognize that [HHMC] has not waived its state action immunity defense based upon its own legislation organizing and authorizing its public taxing hospital district, and may continue to rely upon that defense.
 
 
 48
 Motion for Clarification filed May 31, 1989. This court denied the motion for clarification by order dated June 26, 1989.
 
 
 49
 Notwithstanding the en banc court's holding and the court's subsequent denial of HHMC's motion for clarification, the panel in Bolt III addressed the merits of HHMC's state action immunity defense. In an attempt to rationalize this contravention of the en banc court's holding, the panel noted:
 
 
 50
 This argument [that HHMC is entitled to state action immunity as a state agency] should be distinguished from the state-action argument abandoned by all of the defendants at oral argument before the en banc court. This panel had previously concluded that, as private parties, the DCH and HHMC defendants were protected by Parker because peer review decisions in Florida were sanctioned by a clearly articulated state policy and were actively supervised by Florida state courts. [Citation omitted.] Having abandoned its Parker defense as a private party HHMC now argues that it is entitled to Parker protection simply because it is a state agency. We agree with HHMC that when a state agency's actions are at issue, we need not address the questions of active supervision and clear articulation, [citation omitted]. We therefore address HHMC's new state-action argument.
 
 
 51
 891 F.2d at 823 n. 22. The facts just recited establish that HHMC's state action argument was not new. The panel majority in this appeal now follows this erroneous rationalization, asserting that HHMC's present state action position is "new" and distinguishable from the private party position waived at en banc oral argument. Maj.Op. at 709 n. 3. The flaws in this rationalization are patently obvious. HHMC could not have "abandoned its Parker defense as a private party" because it never asserted a Parker defense as a private party; indeed, it specifically disclaimed any reliance upon the defense as a private party. HHMC's present state immunity argument is the same as it has always been: that it is entitled to such immunity as a state agency or a municipality. This argument is not, then, HHMC's "new " state immunity argument; it is HHMC's only state immunity argument, and it was waived before the en banc court. Thus, the panel majority's decision to reach the merits of HHMC's state immunity defense rests on erroneous factual conclusions and directly contravenes the unequivocal holding of the en banc court.
 
 
 52
 Any assertion that this panel is bound by Bolt III as the law of this case is meritless. This panel is not bound by Bolt III. Quite the contrary, the en banc opinion is the law of this case and can only be changed by the en banc court. When a panel opinion is inconsistent with a holding of the en banc court, we are obligated to follow the holding of the en banc court. See United States v. Clavis, 977 F.2d 538 (11th Cir.1992) (withdrawing references to an Eleventh Circuit panel opinion inconsistent with a former Fifth Circuit en banc opinion). Bolt III and the majority opinion here cannot be reconciled with the en banc court's holding that HHMC waived the Parker state immunity exemption.
 
 State Action Immunity Is Inapplicable
 
 53
 Even if the panel were authorized to reach the merits of HHMC's state action immunity defense, which it is not, HHMC is not entitled to such immunity.[1] Political subdivisions, such as municipalities, are entitled to state action immunity under Parker only if they can establish that the restriction of competition is "an authorized implementation of state policy." City of Columbia, --- U.S. at ----, 111 S.Ct. at 1349. The state policy must be " 'clearly articulated and affirmatively expressed,' " and it must evidence the state legislature's intent " 'to displace competition with regulation or monopoly public service.' " Town of Hallie, 471 U.S. at 39, 105 S.Ct. at 1716. As the Supreme Court recently said:
 
 
 54
 Besides authority to regulate, however, the Parker defense also requires authority to suppress competition--more specifically, "clear articulation of a state policy to authorize anticompetitive conduct" by the municipality in connection with its regulation. [Citation omitted.] We have rejected the contention that this requirement can be met only if the delegating statute explicitly permits the displacement of competition, [citation omitted]. It is enough, we have held, if suppression of competition is the "foreseeable result" of what the statute authorizes, [citation omitted].
 
 
 55
 City of Columbia, --- U.S. at ----, 111 S.Ct. at 1350. In the Florida statutory scheme upon which HHMC relies, there is no "clear articulation of a state policy to authorize anticompetitive conduct"; neither is suppression of competition a "foreseeable result" of what the statutes authorize.[2] HHMC is a special tax district created pursuant to 1979 Fla.Laws ch. 79-577. This chapter conveys upon HHMC "all the powers of a body corporate." The chapter further provides that HHMC
 
 
 56
 may establish, construct, operate, and maintain such hospitals, medical facilities clinics, and out-patient facilities and services as are necessary. The hospitals, medical facilities or clinics, and out-patient facilities and services shall be established, constructed, operated, and maintained by [HHMC] for the preservation of the public health, for the public good and for the use of the public of the district; and maintenance of such hospitals, medical facilities, clinics, and out-patient facilities and services in the district are hereby found and declared to be a public purpose and necessary for the general welfare of the residents of the district.
 
 
 57
 The chapter also grants to HHMC the power of eminent domain, the power to borrow money, and the power to authorize the issuance of bonds. Notwithstanding the broad powers granted to HHMC by this chapter, nothing in the chapter purports to grant to HHMC the power to regulate the practice of medicine, and the chapter does not even mention medical staff. Thus, this chapter cannot possibly be said to evidence a clearly articulated state policy authorizing anticompetitive activity in the selection of medical staff. The Ninth Circuit reached a similar result in Lancaster Community Hospital v. Antelope Valley Hospital District, 940 F.2d 397 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). Noting that "Town of Hallie does not require that we invariably conclude, regardless of the circumstances, that a broad mandate to act gives authority to prevent others from acting," the Ninth Circuit rejected the hospitals' argument that "their broad authority to provide hospital services in and of itself establishes authority to exclude others from providing hospital services." Id. at 400-01. Relying in part on its finding that the state statutory scheme did not convey to the hospitals the power to regulate the hospital services market, the court concluded "that the state ... has not displaced competition with regulation in the provision of hospital services, and ... defendants are therefore not shielded by state-action immunity." Id. at 402. See also Wicker v. Union County General Hospital, 673 F.Supp. 177 (N.D.Miss.1987) (statute designed to clarify and expand the power of the boards of trustees of community hospitals insufficient to show that state articulated a policy to displace competition with regulation).
 
 
 58
 HHMC also relies on the licensing and regulation statutes applicable to all hospitals, Fla.Stat. ch. 395. Only one part of this chapter, as in effect in 1981,[3] makes reference to medical staff. This part reads:
 
 
 59
 395.065 Hospital disciplinary power.--
 
 
 60
 (1) The medical staff of any hospital licensed pursuant to this chapter is authorized to suspend, deny, revoke, or curtail the staff privileges of any staff member for good cause, which shall include, but not be limited to:
 
 
 61
 (a) Incompetence.
 
 
 62
 (b) Negligence.
 
 
 63
 (c) Being found an habitual user of intoxicants or drugs to the extent that the physician is deemed dangerous to himself or others.
 
 
 64
 (d) Being found liable by a court of competent jurisdiction for medical malpractice.
 
 
 65
 However, the procedures for such actions shall comply with the standards outlined by the Joint Commission of Accreditation of Hospitals and the Principles of Participation in the Federal Health Insurance Program for the Aged.
 
 
 66
 (2) There shall be no liability on the part of, and no cause of action of any nature shall arise against, any hospital, hospital medical staff, or hospital disciplinary body or its agents or employees for any action taken in good faith and without malice in carrying out the provisions of this section. [Emphasis added.]
 
 
 67
 395.0653 Use of hospital and staff.--
 
 
 68
 . . . . .
 
 
 69
 (2) Nothing herein shall restrict in any way the authority of the medical staff of the hospital to review for approval or disapproval all applications for appointment and annual reappointment to all categories of staff and make recommendations on each to the governing authority, including delineation of privileges to be granted in each case. In making such recommendations and in delineation of privileges, each applicant shall be considered on an individual basis pursuant to criteria applied equally to all other disciplines.
 
 
 70
 (3) Within 180 days after July 1, 1979, the governing body of every hospital shall set standards and procedures to be applied by the hospital and its medical staff in considering and acting upon applications for staff membership or professional privileges. These standards and procedures shall be available for public inspection.
 
 
 71
 These statutes permit the governing body and the medical staff of a hospital to make decisions regarding staff membership and professional privileges. This decisionmaking power is obviously necessary to the proper functioning of any hospital. These statutes cannot possibly be read as articulating a state policy to authorize anticompetitive conduct in the selection of medical staff. Other courts reviewing statutory schemes similar to the Florida scheme have reached the same conclusion. For example, in Quinn v. Kent General Hospital, Inc., 617 F.Supp. 1226 (D.Del.1985), the hospital argued that its action in failing to admit the plaintiff doctor to active staff privileges was immune from antitrust liability by virtue of the state action doctrine. The hospital relied on a statutory medical peer review procedure that provided immunity from all liability to members of the peer review committees for good faith actions taken in pursuit of their duties. In rejecting the hospital's argument and holding that the peer review statute was not intended to displace competition, the court stated:
 
 
 72
 [T]here is not even a hint in the Delaware statute that the peer review process will be promoted by conferring a monopoly upon those physicians with entrenched positions on hospital staffs. Nor is there any reason that promotion of the peer review process should require any additional restriction of competition. To be sure, this competition must occur within the boundaries of standards established by the medical profession and the state, and within the limits set by the capacity of the available hospital facilities, but there is no reason that the peer review process should be used to place additional restraints on competition among physicians. Indeed, the peer review process is arguably procompetitive, for by monitoring the qualifications and performance of physicians it may compensate for the relative lack of information about these matters by consumers. [Footnote omitted.]
 
 
 73
 Id. at 1239. Similarly, in Posner v. Lankenau Hospital, 645 F.Supp. 1102 (E.D.Pa.1986), the court held that the state regulatory scheme, which provided that medical staffs must define the requirements for admission to staff membership, "does not reveal an intention to replace competition in the market for hospital medical staff positions among physicians with a regulatory structure." Id. at 1117. See also Ratino v. Medical Service of District of Columbia (Blue Shield), 718 F.2d 1260, 1268 (4th Cir.1983) (statute that contemplates that defendant would be investigating complaints against doctors and making recommendations regarding discipline did not provide a shield for any anticompetitive activities).
 
 
 74
 A panel of this court recently reviewed Alabama's hospital regulatory scheme and concluded that the defendant hospital was entitled to state action immunity. Todorov v. DCH Healthcare Authority, 921 F.2d 1438 (11th Cir.1991). The Alabama scheme at issue in Todorov, however, is quite different from the Florida scheme at issue here. Indeed, the panel in Todorov noted: "[U]nlike Town of Hallie and Bolt [referring to Bolt III ], this case involves a statute that expressly authorizes anticompetitive conduct." Id. at 1462. As the panel acknowledged, the Florida scheme contains absolutely no express authorization of anticompetitive conduct.[4]
 
 
 75
 The Florida scheme is also distinguishable from the Indiana scheme at issue in Marrese v. Interqual, Inc., 748 F.2d 373 (7th Cir.1984), cert. denied, 472 U.S. 1027, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985). In Marrese, the Seventh Circuit held that the defendants were entitled to state action immunity because they were all acting within the state mandated, "comprehensive statutory scheme of medical peer review." Id. at 387. Such a comprehensive statutory scheme of medical peer review is conspicuously absent from the Florida statutes quoted above.[5] Finally, the Florida scheme is distinguishable from the North Carolina statute at issue in Coastal Neuro-Psychiatric Associates, P.A. v. Onslow Memorial Hospital, 795 F.2d 340 (4th Cir.1986). The North Carolina statute authorized hospitals to determine which physicians would have privileges based upon, among other things, "appropriate utilization of hospital facilities." There is no analogous provision in the Florida statutory scheme. See Wicker, 673 F.Supp. at 185 (distinguishing the Mississippi statute on the same grounds).
 
 
 76
 The Florida statutory scheme applicable to this case contains no "clear articulation of a state policy to authorize anticompetitive conduct" in the disposition of medical staff privileges. The grant of power to a hospital to review the qualifications of its medical staff is hardly analogous to the grant of power to a municipality to regulate billboards, as in City of Columbia, or to construct sewage systems, as in Town of Hallie. The suppression of competition simply is not a "foreseeable result" of empowering a hospital to ensure that its staff is qualified. At most, the Florida legislation at issue here establishes that the State is neutral toward competition limiting actions. As a panel of this court recently said:
 
 
 77
 "[T]he requirement of 'clear articulation and affirmative expression' is not satisfied when the State's position is one of mere neutrality respecting the municipal actions challenged as anticompetitive."
 
 
 78
 McCallum v. City of Athens, 976 F.2d 649, 653 n. 6 (11th Cir.1992) (quoting Community Communications Co. v. City of Boulder, 455 U.S. 40, 55, 102 S.Ct. 835, 843, 70 L.Ed.2d 810 (1982)).
 
 Conclusion
 
 79
 The majority has been misled to its erroneous conclusion in this case because of errors made by the panel in Bolt III. Our en banc court in Bolt II unequivocally held that the defendants had waived the Parker state immunity defense; the panel in Bolt III erred by holding that the en banc court had limited the application of this waiver determination to private parties only. Nothing could be further from the truth, as has been amply demonstrated by reference to the en banc opinion, the history of the positions and defenses pled by the parties prior to the en banc decision, and the motion for clarification of that decision by the appellant here, HHMC, which motion was denied. The history of the case forever puts to rest the breadth of the waiver by the defendants and the preclusiveness of the en banc opinion.
 
 
 80
 Even if the issue had survived, Florida law applicable to this case did not authorize hospitals to suppress competition nor was suppression of competition a foreseeable result of the state's statutes governing hospitals.
 
 
 81
 For these reasons, I respectfully dissent.
 
 
 
 *
 Honorable Harry W. Wellford, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 The facts of this case are discussed extensively in our last panel opinion, Bolt v. Halifax Hosp. Medical Center, 891 F.2d 810 (11th Cir.), cert. denied, 495 U.S. 924, 110 S.Ct. 1960, 109 L.Ed.2d 322 (1990). The following summary includes only those facts necessary for this appeal
 
 
 [2]
 The only conspiracy discussed by the district court and the only one we discuss in this opinion is the alleged conspiracy between HHMC and the members of its peer review committee
 
 
 [3]
 These arguments are to be distinguished from the argument waived by all the hospitals at en banc oral argument, namely, that they were private parties acting pursuant to a clearly articulated state policy and that they were actively supervised by the State. Bolt v. Halifax Hosp. Medical Center, 891 F.2d 810, 823 n. 22 (11th Cir.1990) (citing Bolt I, 851 F.2d at 1281-84). In its brief on rehearing en banc, HHMC modified its state-action immunity argument and raised these two new alternative arguments. Bolt III, 891 F.2d at 823 n. 22. Therefore, the state agency and municipality arguments were considered by the panel on remand
 
 
 [4]
 Lafayette also suggested that to qualify for Parker immunity the municipality was required to be "actively supervised" by the State. In Town of Hallie, the Supreme Court rejected this suggestion. The Court reasoned that this requirement, which is applied when private parties are involved, is "necessary to prevent a State from circumventing the Sherman Act's proscriptions by casting ... a gauzy cloak of state involvement over what is essentially a private price-fixing arrangement." Town of Hallie, 471 U.S. at 46-47, 105 S.Ct. at 1720 (internal quotation marks & citations omitted). The dangers present when a private party is acting, however, are not present when a municipality is acting. The Court held, therefore, that "[o]nce it is clear that state authorization exists, there is no need to require the State to supervise actively the municipality's execution of what is a properly delegated function." Id
 
 
 [5]
 Prior to filing his brief on appeal, Bolt filed a motion to dismiss this appeal for lack of jurisdiction. In support of this motion, Bolt argued that the denial of a motion for summary judgment was not immediately appealable as a final order and that, in light of this court's previous opinion in Bolt III, the law-of-the-case doctrine precluded review of HHMC's claim to state-action immunity
 We conclude that we have jurisdiction of this appeal pursuant to the collateral order doctrine. See Commuter Transp. Sys., Inc. v. Hillsborough County Aviation Auth., 801 F.2d 1286, 1289-90 (11th Cir.1986) (order denying motion for summary judgment grounded on Parker immunity is immediately appealable as a collateral order). Also, Bolt's reliance on the law-of-the-case doctrine is without merit because an exception to that doctrine applies where, as here, controlling authority has made contrary law applicable to the issue previously decided. Heathcoat v. Potts, 905 F.2d 367, 371 (11th Cir.1990). Accordingly, his motion to dismiss is DENIED.
 
 
 [1]
 In reaching the opposite conclusion, the majority relies on the panel's decision in Bolt III. As noted above, I acknowledge that one can assert that Bolt III is the law of this case. The law of the case doctrine does not apply to preclude reconsideration of an issue previously decided if the previous decision "was clearly erroneous and would work a manifest injustice." Westbrook v. Zant, 743 F.2d 764, 768 (11th Cir.1984). The panel's determination in Bolt III that "the Florida legislature clearly articulated a policy to displace competition" is clearly erroneous and works a manifest injustice
 
 
 [2]
 The state statutes relevant to this inquiry are those in effect when HHMC engaged in the challenged conduct. Bolt I, 851 F.2d at 1281 n. 12; Tambone v. Memorial Hospital for McHenry County, Inc., 825 F.2d 1132, 1134-35 (7th Cir.1987)
 
 
 [3]
 See note 2
 
 
 [4]
 The Florida statute now provides that "[i]t is the intent of the Legislature that good-faith participants in the process of investigating and disciplining physicians ... be protected from federal antitrust suits...." Fla.Stat. ch. 395.0115(1) (1991). This provision is irrelevant to this case as it was enacted after 1981. See note 2
 
 
 [5]
 The Florida statute now provides that each hospital must "provide for peer review of physicians." Fla.Stat. ch. 395.0115(2) (1991). This provision is irrelevant to this case as it was enacted after 1981. See note 2